2003 ME 75

**STATE of Maine and Maine Board
of Dental Examiners**

v.

**Ralph B. DHUY.**

Supreme Judicial Court of Maine.

Argued: Jan. 16, 2003.
Decided: June 4, 2003.

Barbara L. Goodwin, Esq. (orally), Richard L. O'Meara, Esq., Murray Plumb & Murray, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Ralph B. Dhuy appeals from a judgment of the District Court (Newport, *Mead, J.*) enjoining him from the practice of denturism until licensed by the Maine Board of Dental Examiners (Board), suspending his right to practice denturism or apply for licensure for a period of ninety days, and imposing specified conditions on Dhuy's license if he becomes licensed as a denturist in the future. Dhuy contends that the court lacked jurisdiction, committed clear error in its factual findings, and erred by disregarding Dhuy's evidence of bias. Finding no error, we affirm the judgment.

## I. BACKGROUND

[¶ 2] Between 1996 and 1999, Dhuy worked as a denturist[1] pursuant to a temporary permit issued by the Board.[2] In June 1998, the Board disciplined Dhuy for

G. Steven Rowe, Attorney General, James M. Bowie, Asst. Attorney General (orally), Judith M. Peters, Asst. Attorney General, Augusta, for plaintiff.

---

1. A "denturist" is a person engaged in the practice of denturism, which is:

   A. The taking of denture impressions and bite registration for the purpose of or with a view to the making, producing, reproducing, construction, finishing, supplying, altering or repairing of a complete upper or complete lower prosthetic denture, or both, to be fitted to an edentulous arch or arches;

   B. The fitting of a complete upper or lower prosthetic denture, or both, to an edentulous arch or arches, including the making, producing, reproducing, constructing, finishing, supplying, altering and repairing of dentures; and

   C. The procedures incidental to the procedures specified in paragraphs A and B, as defined by the board.

   32 M.R.S.A. § 1100–B(3)(A)–(C) (1999):

2. Section 1100–C(5) provided that:

   The board may issue temporary permits to persons who demonstrate to the satisfaction of the board a minimum of 10 years, in some combination of training and experience in denture mechanics or technology or as a denture laboratory technician. The board shall keep a record of supervising dentists and may charge the applicant an annual permit fee that may not exceed $25. A permit holder must practice denturism under the direct supervision of a dentist. The board may not issue a permit under this provision after January 1, 2000.

   32 M.R.S.A. § 1100–C(5) (1999).

advertising infractions.[3] One year later, Dhuy applied for a license from the Board pursuant to the then newly enacted licensing statute for denturists, 32 M.R.S.A. § 1100–E (1999 & Supp.2002). The Board tabled his application, and Dhuy's existing temporary denturist permit expired in October 1999. The next month the State and the Maine Board of Dental Examiners (collectively, the State) initiated this action seeking, among other things, an injunction that would bar Dhuy from the practice of denturism, a monetary penalty, and additional relief.

[¶ 3] Following a trial, the District Court[4] in May 2002 entered a judgment which contained detailed findings, granted injunctive relief, and denied the State's request for the imposition of a monetary penalty. The court found, inter alia, that Dhuy: engaged in deceptive and misleading advertising since being sanctioned; improperly used the appellation "doctor" and initials "DDM" to engage in a misleading and deceptive marketing practice; repeatedly and incorrectly advertised that a dentist and another denturist were associated with him when they were not; and failed to keep required client records. The court concluded that because Dhuy had been practicing without a license since October 1999, injunctive relief pursuant to 32 M.R.S.A. § 1062–A (1999 & Supp.2002) was appropriate. The court also concluded that while it had no jurisdiction to impose sanctions for infractions occurring after October 15, 1999, the infractions "may be considered in conjunction with the request for injunction and [Dhuy's] pending application."

[¶ 4] The judgment enjoined Dhuy from the practice of denturism until he is properly licensed, defining denturism as including "the direct sale or providing of denture fabrication services to any person other than through a licensed dentist" and "the owning or operation [of] a proprietorship which provides denturism services directly to end users even if such services are rendered by another who is licensed." It also suspended for ninety days Dhuy's right to practice or apply for licensure as a denturist; denied his present application for licensure; and prohibited the Board from utilizing the evidence from the trial to deny Dhuy's prospective applications, but permitted the Board to consider other evidence and other matters, including the fact that the judgment had occurred. In addition, the court ordered that the Board must impose, at a minimum, the following conditions on any future license granted to Dhuy:

> [First, Dhuy] must present all proposed advertising to the Board, or its delegate, for approval at least 30 days prior to its dissemination. If the Board, or its dele-

---

**3.** The Board found that Dhuy violated 32 M.R.S.A. § 1077(2)(F), (H) (1999 & Supp. 2002) and Chapter 8 of the Board's rules, 02–313 C.M.R. ch. 8 (1999), by his improper and misleading publication of advertisements that asserted professional superiority. The Board imposed a $1500 civil penalty on Dhuy, suspended his permit for fifteen business days, and ordered a one-year probation period to follow the suspension, during which Dhuy was to attend an ethics course before November 1998 and obtain advance approval of the Board for any advertisements. Dhuy paid the fine in June 1999, and paid and registered for, but never took, an ethics course at George Brown College in Toronto, Ontario. After the Board decision, Dhuy repeatedly advertised his professional services as a denturist without once seeking approval of the Board.

**4.** The action was initiated by a complaint filed by the Attorney General in the former Administrative Court in November 1999. After the Administrative Court was abolished, the case was transferred to the District Court in Newport. In February 2002 the case was assigned to a Superior Court justice sitting, by designation, in the District Court.

gate, rejects the proposed advertising, it shall not be disseminated. This provision presumes that the Board will act in good faith and not withhold its approval of advertising which does not violate any rules or regulations or is not deceptive or misleading. If the Board, or its delegate, approves or fails to act upon proposed advertising within 30 days after submission, the advertising may be disseminated. [Second, Dhuy] shall keep duplicate records of all patient contacts at two separate locations, which shall be available to the Board, or its delegate, for inspection at any time. [Third, Dhuy] shall never display or reference his DDM diploma where any patient may observe it (including advertising and shall never acquiesce to his being called "doctor").

[¶ 5] Following the court's denial of his motion to alter or amend the judgment, Dhuy filed this appeal. In September 2002 Dhuy filed a second application for licensure as a denturist; the Board preliminarily denied the application in December 2002; and Dhuy appealed the denial. One week after the January 2003 oral argument in connection with the appeal of the District Court judgment, and independent of the District Court action, the Board entered an order concluding that "Dhuy, by virtue of his passing the licensure examination in 1999, currently qualifies for licensure," subject to six conditions. The first three conditions mirrored the three conditions mandated by the May 2002 judgment, with a five-year limitation as to how long Dhuy would need to get prior approval for his advertising added to the first condition.

## II. DISCUSSION

### A. Mootness

[¶ 6] "[C]ourts should decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." *In re Faucher*, 558 A.2d 705, 706 (Me.1989) (quoting *State v. Gleason*, 404 A.2d 573, 578 (Me.1979)). The expiration of the ninety-day suspension on Dhuy's right to apply for a license, and the grant of a denturism license to Dhuy during the pendency of this appeal, constitute supervening circumstances that render this appeal moot as it pertains to the corresponding provisions of the District Court's judgment. In addition, none of the three narrowly defined exceptions to the mootness doctrine apply to these provisions. *See Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 6, 802 A.2d 994, 996 (Three exceptions to the mootness doctrine exist "for issues that (1) have sufficient collateral consequences; (2) are of great public concern; or (3) are capable of repetition but evade review.").

[¶ 7] The appeal is not moot in its entirety, however, because of the injunction's requirement that the Board impose license conditions on any license it might issue to Dhuy. The first three of the six conditions imposed by the Board in conjunction with the license issued to Dhuy in January 2003 mirror the three conditions ordered by the District Court and were imposed by the Board in direct response to the judgment. Thus, a decision in favor of Dhuy in this appeal could enable him in the future to seek the termination or modification of the license conditions because both he and the Board would no longer be bound by the judgment. Because the determination of the issues could provide Dhuy with "real or effective relief" if he prevails, his appeal retains vitality and is not moot. *See In re Misty B.*, 2000 ME 67, ¶ 7, 749 A.2d 754, 756 (quoting *Sordyl v. Sordyl*, 1997 ME 87, ¶ 4, 692 A.2d 1386, 1387).

## B. Subject Matter Jurisdiction

[¶ 8] Dhuy contends that the Board lacked statutory authority to bring a court action against him because he was not licensed by the Board at the time the action was initiated. He also contends that the District Court lacked subject matter jurisdiction for this reason. Questions of law, such as whether subject matter jurisdiction exists, are subject to de novo review. *Town of Carmel v. McSorley*, 2002 ME 33, ¶ 5, 791 A.2d 102, 105. "Jurisdiction is the essential basis upon which all court powers rest, and even willing submission by the parties of their dispute cannot confer it." *Fletcher v. Feeney*, 400 A.2d 1084, 1089 (Me.1979). If the trial court lacks jurisdiction, the absence of jurisdiction is noticed, and the case proceeds no further. *Id.* (citing M.R. Civ. P. 12(h)(3)).

[¶ 9] "The District Court has original concurrent jurisdiction to grant equitable relief in proceedings initiated by an agency or the Department of the Attorney General alleging any violation of a license or licensing laws or rules." 4 M.R.S.A. § 152(9) (Supp.2002).[5] In addition, the Attorney General has the authority to initiate and maintain actions and proceedings on behalf of the State with the intention of protecting the public even when the State is not an indispensable party. *Bell v. Town of Wells*, 510 A.2d 509, 519 (Me. 1986); *see also* 5 M.R.S.A. § 191 (2002) (providing the Attorney General with authority to represent the State in civil actions in which the State is interested).[6]

[¶ 10] Here, the Board requested that the Attorney General file a complaint in response to Dhuy's failure to satisfy the Board's order of June 1998 and his continuing violation of the Dental Practice Act. At the time of his alleged violations, Dhuy was a licensee because he held a temporary denturist permit and thus was subject to the Board's authority. In addition, the Attorney General has the authority independent of a request from the Board to initiate and maintain an action under section 152(9). Thus, the Board and the Attorney General have the authority to bring this action, and the District Court has subject matter jurisdiction to consider it.

## C. Deceptive and Misleading Advertisements

[¶ 11] Dhuy contends that because no evidence of actual confusion resulting from Dhuy's advertisements among patients, professionals, or the general public was presented at the trial, the trial court should not have concluded that his advertising was actually deceptive and misleading.

[¶ 12] The State may limit commercial speech that is either actually or inherently misleading. *Edenfield v. Fane*, 507 U.S. 761, 768, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993). Restrictions on the advertisement of professional services "may be no broader than reasonably necessary to prevent the deception." *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 71

---

5. Before March 15, 2001, the Administrative Court had "original concurrent jurisdiction to grant equitable relief in proceedings initiated by an agency or the Department of the Attorney General alleging any violation of a license or licensing laws or rules." 4 M.R.S.A. § 1151(2) (1989) (repealed 1999). Since March 15, 2001, the District Court has replaced the Administrative Court in concurrent jurisdiction of licensing violations. 4 M.R.S.A. § 152(9) (Supp.2002).

6. The State also could have initiated an action in Superior Court to enjoin Dhuy because he was an unlicensed "person who practices or falsely claims legal authority to practice ... denturism." 32 M.R.S.A. § 1062–A(1) (1999).

L.Ed.2d 64 (1982). When advertising presents information easily recognizable as misleading, evidence of consumer reaction is unnecessary to a finding of deception. *Help–U–Sell, Inc. v. Me. Real Estate Comm'n*, 611 A.2d 981, 984 (Me.1992) (finding the phrase "for sale by owner" in a real estate broker's advertisement to be misleading because the actual meaning differed from the commonly understood definition of being for sale directly by owner without the services of a broker).

[¶ 13] Dhuy advertised repeatedly in various publications, the telephone directory, and on radio stations during his one-year probation period between June 1998 and June 1999 without first seeking prior approval of the Board, and after October 1999 when he no longer was a licensed denturist. The State introduced evidence of numerous examples of Dhuy's advertisements during these times that were deceptive and misleading. For example, Dhuy was described in a print advertisement as having earned "a doctor of medical denturity degree," magna cum laude, from Mills–Grae University in Kalispell, Montana in 1995. He also announced in radio commercials that he had recently received from Mills–Grae University a doctor of medical denturity, which he referred to as a "D.D.M. degree." These print and radio advertisements are easily recognized as misleading because the common understanding of a medically related doctorate degree is four or more years of graduate work and Dhuy's degree was earned after only four weeks of instruction. Further, the appellation "D.D.M" could be easily

viewed as an abbreviation for a doctorate in dental medicine.[7] In addition, Dhuy published advertisements in which he represented that a dentist and another denturist were associated with him at times when they were not, and he described himself as "Maine's 1st Licensed Denturist," creating the false impression that he held an active license to practice denturism. There was abundant support for the court's conclusion that Dhuy continued to engage in deceptive and misleading advertising after being sanctioned by the Board in 1998.

### D. Bias

[¶ 14] Dhuy alleges that the District Court erred when it rejected his claim that the Board was motivated by bias against him in that it singled him out for unduly harsh treatment because of his legislative activism on behalf of denturists. The State responds that Dhuy failed to establish bias, and that there was no evidence that the Board's action had a discriminatory effect and that the Board was motivated by a discriminatory purpose.

[¶ 15] Because the trial court has had the opportunity "to judge ... the credibility of the witnesses," the trial court's factual findings are not set aside upon appellate review unless the findings are "clearly erroneous." M.R. Civ. P. 52(a); *Me. Farmers Exch. v. Farm Credit of Me.*, 2002 ME 18, ¶ 16, 789 A.2d 85, 90. In order for a finding of fact to be altered or reversed under a clearly erroneous standard, one of the following must be

---

7. *See* 32 M.R.S.A. § 1092 (1999) (making it a Class E crime to append to one's name "letters that falsely represent the person as having a degree from a dental college"); 32 M.R.S.A. § 1100–E(5)(A) (1999) (prohibits a denturist from "[f]alsely claim[ing] to be a licensed dentist or allow[ing] another to falsely represent the denturist as a licensed dentist"); and 32 M.R.S.A. § 3270 (1999) (prohibits anyone but a licensed doctor, chiropractor, naturopathic doctor, optometrist, or podiatrist from practicing medicine, surgery, or a branch of medicine and using the title "Doctor" or the letters "Dr." in connection with his name, and makes such an action a Class E crime.).

found: "no competent evidence in the record to support [the factual finding;] ... clear misapprehension by the trial court of the meaning of the evidence" when it found the particular fact; or "the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Minot Sch. Comm. v. Minot Educ. Ass'n*, 1998 ME 211, ¶ 6, 717 A.2d 372, 375 (quoting *Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981)).

[¶ 16] "In order to establish a constitutional equal protection violation based on selective prosecution or selective enforcement, a plaintiff must at a minimum establish that the challenged decision ... had a discriminatory effect and that it was motivated by a discriminatory purpose." *Polk v. Town of Lubec*, 2000 ME 152, ¶ 14, 756 A.2d 510, 513 (quotation marks omitted) (finding no evidence of disparate treatment or discriminatory motivation because the plaintiff's allegations were conclusory and unsubstantiated, and no similarly situated applicants were presented).

[¶ 17] While Dhuy presented some evidence that he might have been treated more harshly than one Maine dentist, he failed to introduce evidence establishing disparate treatment of similarly situated persons; that is, he failed to present evidence of another denturist or dentist who had received a Board disciplinary order, repeatedly and publicly ignored the order, and then was treated less harshly by the Board when he or she further transgressed. Dhuy failed to establish that the Board's actions had a discriminatory effect or were motivated by a discriminatory purpose because Dhuy's deceptive and misleading advertisements provided adequate grounds for the Board's actions toward Dhuy. Thus, the court was not compelled to find from this record that the Board was biased or that it unlawfully discriminated against Dhuy.

## E. Injunctive Relief

[¶ 18] Dhuy asserts that the court erred when it required that the Board impose, at a minimum, three specific conditions upon any future license held by Dhuy because the specific conditions exceed normal requirements of a licensed denturist. The State responds that the injunction imposing conditions upon any future denturist license Dhuy might hold is appropriate given Dhuy's history of repeated misconduct and the need to protect the public.

[¶ 19] The issuance of an order granting an injunction is reviewed for an abuse of discretion. *See Shapleigh v. Shikles*, 427 A.2d 460, 466 (Me.1981). In order for a permanent injunction to be valid, the order granting it must "set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail ... the act or acts sought to be restrained." M.R. Civ. P. 65(d).[8] A court has broad and flexible discretion to fashion an appropriate injunction in order to provide remedial relief, particularly when the public interest is involved. *State v. Shattuck*, 2000 ME 38, ¶ 23, 747 A.2d 174, 180–81.

---

8. Permanent injunctions do not require an expiration date and may continue indefinitely. A party can move to terminate or modify an injunction through M.R. Civ. P. 60(b) (providing for relief from judgment when "it is no longer equitable that the judgment should have prospective application; or [for] any other reason justifying relief from the operation of the judgment"). Horton & McGehee, *Maine Civil Remedies* § 5–10(i)(3) at 146 (3d ed.1996).

[¶ 20] Here, the court determined that because Dhuy had been practicing without a license on a number of occasions, injunctive relief was appropriate. The court was specific in its terms and described in reasonable detail the advertising activities, record keeping, and use of the DDM diploma and the prefix "doctor," and how these acts were to be restrained. Based on Dhuy's history of failing to observe the Board's earlier order, the District Court acted well within its broad discretion to fashion an injunction that was responsive to the specific misconduct the court found.

[¶ 21] We do not address Dhuy's remaining arguments on appeal, which we find to be without merit.

The entry is:

Judgment affirmed.