STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                     CIVIL ACTION
                                                  Docket No. AP-08-23
                                                  *NM - SEN-12/5*

BOARD OF LICENSURE IN MEDICINE,

             Petitioner
v.                                                DECISION AND ORDER

SCOTT L. DIERING, M.D.,

             Respondent


Pursuant to M.R. Civ. P. 80C, the petitioner seeks judicial review of the respondent Maine Board of Licensure in Medicine (the Board)'s final agency action. The Board found the petitioner committed several statutory violations, imposed discipline upon the petitioner in the form of a reprimand, permitted petitioner's license to lapse, and assessed petitioner costs of the hearing. (R. Tab 20 at 8-9.) For the following reasons, the decision of the Board is affirmed.

FACTS

The petitioner applied for licensure in Maine pursuant to an application dated November 26, 2002, received by the Board on December 2, 2002. (State's Ex. 2 at P10) On the application, the petitioner answered "no" to question 6: "Have you EVER suffered from any physical, psychiatric, or addictive disorder that would impair or require limitations on your functioning as a physician, or that resulted in the inability to practice medicine for more than 30 days?" (Id. at P11.) On November 16, 2004, the Board issued a medical license to the petitioner. (Id. at P9.) The petitioner practiced medicine in Maine at the Aroostook Medical Center for a total of two shifts, on December 10 and 11, 2004. (State's Ex. 27 at P117.)

On his application for re-licensure, received by the Board on November 7, 2005, the petitioner answered "yes" in response to question 15-5, which asked: "Since last renewal, have you had any of the following occurrences: Suffered from any physical, psychiatric, or addictive disorder that would impair or require limitations on your functioning as a physician or resulted in an inability to engage in the practice of medicine for more than 30 days?" (State's Ex. 3 at P77.)[1] As mandated by the re-licensure application,[2] petitioner attached a separate sheet of paper to his application and explained his response:

> In February, 2005 I was hospitalized for aspiration pneumonitis and Adult Respiratory Distress Syndrome (ARDS). This led to a prolonged hospital course, with ventilator support and exploratory laparotomies. I am currently scheduled for a ventral hernia repair on November 17, 2005, with Dr. Thomas Scalea at the University of Maryland. I expect to make a full recovery. With this exception, I suffer no significant long term sequelae.

> I am under the care of Dr. Christopher Murphy for depression. I take Remeron and Lexapro for this condition.

> These illnesses in no way impact or limit my ability to practice medicine.

(Id. at P80.)

Petitioner also answered "no" in response to question 15-6: "Since last renewal, have you had any of the following occurrences: Been indicted, arrested or convicted of any criminal offense (including motor vehicle offenses but not including minor traffic or parking violations)?" (Id. at P77.) On December 1, 2005, the Board renewed petitioner's medical license. (Id. at P76.)

The Board received a copy of an order dated February 2, 2007 issued by the Missouri State Board of Registration For the Healing Arts (Missouri Board) granting the

---

[1] In the application and renewal, the petitioner signed an affidavit and affirmed that his answers were true. (State's Ex. 2 at P10; State's Ex. 3 at P10.)

[2] The application provided that "[a]ny 'yes' response must be explained fully on a separate, attached 8 x 11 sheet of paper cross-referenced by question number." (State's Ex. 3 at P77.)

2

petitioner a temporary/limited license.[3] (State's Ex. 5.) According to that order, the petitioner: (1) had "a past history of alcohol abuse which culminated with his experimenting with cocaine in 2005"; (2) overdosed on cocaine on February 8, 2005; (3) "enrolled in Crossroads Centers for chemical dependency treatment" in July 2005; and (4) "entered into criminal probation for a period of eighteen (18) months for the criminal charge of paraphernalia possession" on August 23, 2005.[4] (State's Ex. 5 at P87-88.)

On March 9, 2007, the Board received a letter[5] from petitioner, in which he stated:

> I am also notifying you that my license in Missouri is in disciplinary status. As I have informed you in the past, I suffered complications of my chemical dependency in February, 2005 . . . I have not committed any infractions of my arrangement with the Missouri licensing board, nor have I demonstrated any unprofessional, inappropriate nor addictive behaviors since I have been granted the license in Missouri, nor since my actions in February, 2005 . . . I have notified all states in which I am licensed about my chemical dependency and my actions in 2005 . . . .

(State's Ex. 6 at P94.)

On April 18, 2007, after review of the foregoing information, the Board voted to initiate a complaint against the petitioner's medical license for fraud and deceit through obtaining a license, engaging in habitual substance abuse, and disciplinary action by another jurisdiction. (State's Ex. 7.) On May 11, 2007, the Board received petitioner's response to the complaint. (State's Ex. 8.)

By letter dated July 12, 2007, the Board notified the petitioner that it had voted to schedule the complaint for an adjudicatory hearing. (State's Ex. 10.) On September 5, 2007, the Board received a facsimile letter from petitioner, in which he acknowledged

---

[3] The Missouri Board's decision to issue a probationary license was overturned on appeal by the Missouri Administrative Hearing Commission. (State's Ex. 29 at P273.)

[4] The Board received further information regarding the petitioner's drug possession charge from the District Court of Maryland in July 2007. (See State's Ex. 16; R. Tab 20 at 4.) The Board also received a copy of the transcript of the petitioner's appeal of the Missouri Board's order in September 2007. (See State's Ex. 28.)

[5] The Missouri order required the petitioner to notify, in writing, within fifteen days of the effective date of the order, the medical facilities where he practiced or had privileges of his disciplinary status in Missouri. (State's Ex. 5 at P92.)

his receipt of the Board's letter, and indicated that he did not intend to return to or practice medicine in Maine, did not intend to appear at the hearing, and offered to surrender his Maine license.[6] (State's Ex. 11.)

On November 30, 2007, the petitioner's Maine medical license expired. (Tr. at 96.) The petitioner did not apply to renew his Maine license. On December 11, 2007, the Board sent the petitioner a "Notice of Adjudicatory Hearing." See 5 M.R.S. § 9052; (R. Tab 3 at 2.) Following a hearing on January 8, 2008, the Board found the petitioner committed the following violations: (1) engaging in the practice of fraud or deceit in obtaining a license in violation of 32 M.R.S. § 3282-A(2)(A); (2) "engaging in habitual substance abuse that has resulted or is foreseeably likely to result . . . in performing services in a manner that endangers the health or safety of patients" in violation of 32 M.R.S. § 3282-A(2)(B); (3) engaging in unprofessional conduct in violation of 32 M.R.S. § 3282-A(2)(F). (R. Tab 20 at 7, 8.)

DISCUSSION

On appeal, the petitioner asserts the following arguments: (1) the Board used an incorrect standard of proof regarding the allegation that the petitioner obtained his license by fraud or deceit; (2) the Board lacked authority to conduct a hearing regarding the petitioner's lapsed license; (3) the record lacked substantial evidence to support the Board's finding that the petitioner engaged in fraud or deceit regarding his 2002 application for licensure; (4) the petitioner's conduct outside Maine could not form the basis for discipline in Maine; and (5) the Board erred by assessing the petitioner with costs of the hearing. (Pet'r Br. at 5-7.) For the following reasons, the Board's decision is affirmed.

---

[6] The petitioner had previously offered to resign his license in Maine. (State's Ex. 8 at P97.)

## I. Standard of Proof

The petitioner argues that the Board erred by applying a preponderance of the evidence standard of proof to the claims that petitioner committed "the practice of fraud or deceit" in obtaining his original license in 2002 and his renewal license in 2005. See 32 M.R.S. § 3282-A(2)(A). The petitioner contends these allegations required proof by clear and convincing evidence. (Pet'r Br. at 8.) The petitioner reasons that the legislature's decision to make fraud and deceit in obtaining a license a ground for discipline must be analyzed against the backdrop of common law, and Maine has a long history of requiring that proof of fraud by clear and convincing evidence. (Pet'r Br. at 8); see, e.g., Maine Eye Care Assocs. P.A. v. Gorman, 2006 ME 15, ¶ 16, 890 A.2d 707, 711 (certain civil actions alleging fraud require proof by clear and convincing evidence).

First, the clear and convincing standard applied in the cases upon which the petitioner relies is utilized in civil tort cases, not administrative proceedings. Although the legislature may require a different standard to be used in the administration of a specific statute, in most instances agency decisions, at least at the federal level, are based on a preponderance of the evidence standard. See, e.g., Steadman v. SEC, 450 U.S. 91, 100-01 (1981) (5 U.S.C. § 556(d) of the federal Administrative Procedure Act applies the preponderance of the evidence standard in determining whether the antifraud provisions of federal securities laws have been violated).

Although the Law Court has not explicitly recognized a default preponderance of the evidence standard in Maine's Administrative Procedure Act, this standard is common in professional disciplinary cases. For example, the Maine Board of Bar Overseers employs the preponderance of the evidence standard in attorney discipline cases, including those involving fraud or deceit. See Bd. of Overseers of the Bar v. Lefebvre, 1998 ME 24, ¶ 14, 707 A.2d 69, 73; M. Bar. R. 7.2(b)(4) ("[i]n an attorney

5

discipline action the Board shall have the burden of proving by a preponderance of evidence the charges specified in the information"); M. Bar. R. 3.2(f)(3) (attorney misconduct includes "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation").

Second, the clear and convincing standard is not as uniform as the petitioner suggests, and is not applicable to all civil tort cases involving fraud. See Petit v. Key Bank of Maine, 688 A.2d 427, 431 (Me. 1996) (declining to apply the clear and convincing evidence standard to the "fraud or intimidation" element of the tort of wrongful interference with an advantageous economic relationship). Moreover, the rationale for applying the clear and convincing standard of proof does not apply to license disciplinary proceedings. The clear and convincing standard "was first applied in equity to claims which experience had shown to be inherently subject to fabrication, lapse of memory, or the flexibility of conscience." Id. ("fears that innovative plaintiffs would fabricate equitable claims regarding documents to avoid restrictions at law were the impetus for adoption of a higher proof requirement at equity in Maine") (citations omitted). No such concern in the context of a license disciplinary proceeding exists to justify a departure from the general rule that requires proof by a preponderance of the evidence.[7] See id. at 432-33.

## II. Board's Jurisdiction

The petitioner argues that because the Board did not give the required notice of an adjudicatory hearing mandated by 5 M.R.S. § 9052 until after the petitioner's medical license expired, the Board lacked authority to conduct the hearing. (Pet'r Br. at 8-10.)

---

[7] The rationale for applying the clear and convincing evidence standard of proof for punitive damages is similarly inapplicable. See Batchelder v. Realty Res. Hospitality, LLC, 2007 ME 17, ¶ 13, 914 A.2d 1116, 1121 (the purpose of the higher standard was to serve the goal of "avoiding an overbroad application of the doctrine of punitive damages," which could dull "the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct") (citations omitted).

6

On July 10, 2007, the Board voted to initiate a complaint against petitioner, and informed petitioner of this decision by letter dated July 12, 2007. On May 11 and September 5, 2007, the Board received letters from the petitioner, in which he acknowledged the Board's actions. (See State's Exs. 8, 11.) The petitioner's license expired on November 30, 2007. On December 11, 2007, the Board sent the petitioner a "Notice of Hearing."

Essentially, the petitioner contends that neither the Board's vote to initiate the complaint, nor the Board's letters sent to the petitioner regarding the Board's actions, were sufficient to commence "disciplinary proceedings and sanctions" against the petitioner. See 32 M.R.S. § 3282-A(1). Instead, the petitioner argues, disciplinary proceedings commence only by giving the notice required by section 9052, which was not given until after petitioner's license had expired. 5 M.R.S. § 9052; (Pet'r R. Br. at 6-7.)

Section 3282-A(1) titled "Disciplinary proceedings and sanctions," provides that, "[t]he board shall investigate a complaint, on its own motion or upon receipt of a written complaint filed with the board, regarding noncompliance with or violation of this chapter or any rules adopted by the board." 32 M.R.S. § 3282-A(1). The Board argues that "disciplinary proceedings" commence with the filing of a complaint. (State's Br. at 15, n.1.) When reviewing an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the first inquiry is whether the statute is ambiguous or unambiguous. Competitive Energy Servs., LLC v. Pub. Utils. Comm'n, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, it is interpreted according to its plain language. Arsenault v. Sec'y of State, 2006 ME 111, ¶ 11, 905 A.2d 285, 288. If the statute is ambiguous, deference is given to the agency's interpretation if the interpretation is reasonable. Id. Resolving any ambiguity in the statute in favor of the Board's reasonable interpretation, a

7

determination that "disciplinary proceedings" commence with the filing of a complaint is supported by the language of the statute. See 32 M.R.S. § 3282-A(1). Petitioner has provided no persuasive authority to the contrary. The petitioner was still licensed in Maine when the Board initiated disciplinary proceedings against the petitioner.

The petitioner relies upon State v. Dhuy and argues that the "rule is that expiration of a license moots any pending disciplinary hearing, absent specific statutory authorization to the contrary." (Pet'r Br. at 9.); State v. Dhuy, 2003 ME 75, 825 A.2d 336. In Dhuy, the Dental Board requested that the Attorney General file a complaint against a licensee for the licensee's continuing statutory violations and failure to satisfy the Board's prior order.[8] 2003 ME 75, ¶¶ 2, 10, 825 A.2d at 338, 341. Following a trial, the District Court entered a judgment against the licensee, enjoined him from practicing until properly licensed, and imposed several conditions on any future license granted by the Board. Id. ¶¶ 3-4, 825 A.2d at 339-40. While the licensee's appeal of the District Court's judgment was pending before the Law Court, the Board granted a license to the licensee, subject to several license conditions. Id. ¶ 5, 825 A.2d at 340. The Law Court concluded that the Board's grant of a license to the licensee during the appeal rendered moot certain provisions of the District Court's judgment. Because both the Board and the licensee would no longer be bound by the conditions imposed by the District Court on any future license if the licensee prevailed, however, the appeal was not entirely moot. Id. at ¶¶ 6-7, 825 A.2d at 340.

After dispensing with the mootness issue, the licensee in Dhuy argued that the District Court had lacked subject matter jurisdiction to consider the action because at

---

[8] The complaint was filed pursuant to 4 M.R.S. § 152(9), which provides that "The District Court has original concurrent jurisdiction to grant equitable relief in proceedings initiated by an agency or Department of the Attorney General alleging any violation of a license or licensing laws or rules." Dhuy, 2003 ME 75, ¶ 9, 825 A.2d at 341.

the time the Board initiated the action the licensee's temporary permit had expired and the Board lacked authority to bring an action against him. Id. ¶ 8, 825 A.2d at 341. The court rejected the licensee's argument, finding that "[a]t the time of his alleged violations, Dhuy was a licensee because he held a temporary denturist permit and thus was subject to the Board's authority." Id. ¶ 10, 825 A.2d at 341. The court found that the Board had authority to bring the action, and the District Court had jurisdiction to consider it. Id.

Contrary to the petitioner's argument, Dhuy does not render "moot" any pending disciplinary hearing upon the expiration of a license. Instead, the Law Court in Dhuy concluded that the Board had authority to bring an action because the licensee held a license "at the time of his alleged violations." Id. In this case, at the time of petitioner's alleged violations and the Board's initiation of the complaint, the petitioner held an active Maine medical license. Because the Board had authority when it initiated the disciplinary proceedings, the Board did not lose authority because the petitioner's license expired. See also Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991) (if jurisdiction exists at the time an action is commenced, jurisdiction is not divested by subsequent events). Moreover, the Law Court has indicated that the Board is not necessarily divested of jurisdiction when a license is surrendered or expires. See, e.g., Golz v. Maine Real Estate Comm'n, 634 A.2d 1288, 1289 (Me. 1993) ("Generally speaking, the disciplinary authority of occupational and professional licensing boards is limited to enforcement against licensees or former licensees."); Wood v. Superintendent of Ins., 638 A.2d 67, 70 (Me. 1994) (citing supporting case law from other jurisdictions but determining it unnecessary to decide the issue).

9

III. Substantial Evidence

The petitioner argues that the record lacks substantial evidence to support the Board's finding that the petitioner committed fraud or deceit in obtaining his initial medical license in 2004.[9] (Pet'r Br. at 10.) The petitioner asserts that it was clear error for the Board to conclude that petitioner's answer to question 6 in the 2002 application involved fraud or deceit. (Pet'r Br. at 12.)

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. Centamore v. Dep't of Human Servs., 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." Seider v. Bd. of Exam'rs of Psychologists, 2000 ME 206, ¶ 9, 762 A.2d 551, 555 (citing CWCO, Inc. v. Superintendent of Ins., 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." Imagineering, Inc. v. Superintendent of Ins., 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." Seider, 2000 ME 206, ¶ 9, 762 A.2d at 555. The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. See Bischoff v. Bd. of Trs., 661 A.2d 167, 170 (Me. 1995).

On his application, petitioner responded "no" to question 6: "Have you EVER suffered from any physical, psychiatric, or addictive disorder that would impair or

---

[9] Petitioner does not appear to challenge the Board's finding that he committed fraud or deceit on his 2005 renewal application. That finding is supported by evidence in the record.

10

require limitations on your functioning as a physician, or that resulted in the inability to practice medicine for more than 30 days?" (State's Ex. 2 at P11.) The petitioner argues that the question is ambiguous and poorly worded. (Pet'r Br. at 11, 12; Pet'r R. Br. at 3-5.) The petitioner also argues that part of the question "is more in the nature of an opinion," and, because fraud or deceit involves a misrepresentation of fact rather than opinion, the petitioner's answer does not constitute fraud or deceit. (Pet'r Br. at 12); see Coffin v. Dodge, 146 Me. 3, 6, 76 A.2d 541, 543 (1950) ("fraud must be a misrepresentation of a past or present fact and not . . . an expression of opinion"). The petitioner argues that because of the ambiguities in the question, the petitioner reasonably believed he was answering the question correctly. (Pet'r R. Br. at 5.)

The Board's finding that petitioner violated section 3282-A(2)(A) is supported by the record. 32 M.R.S. § 3282-A(2)(A). Evidence was presented that petitioner became addicted to alcohol and prescription drugs and, in 2001, admitted himself to Harmony House, a 28-day in-patient treatment program in Colorado. (Tr. at 34-36; State's Ex. 28.) The petitioner thereafter attended AA meetings and a program to support recovering addicts. (Tr. at 38-39.) The Board was concerned that the petitioner was less than forthcoming in his 2002 application and described several of his answers as "the truth, but not the whole truth." (R. Tab 20 at 6.)

In explaining his reason for failing to disclose his addiction and hospitalization on his 2002 application, the petitioner explained that his treatment at Harmony was 28 days, rather than 30. (Tr. at 43-44.) Although the petitioner testified that he believed he "didn't violate the literal letter of the law," he admitted he "violate[d] the spirit of the application" and should have been "more forthcoming." (Id. at 44.) The petitioner's acknowledgement that he "really d[id]'nt have a good answer" as to why he failed to include certain details in answering the license application questions, and the

11

petitioner's acknowledgement that he was answering questions in the narrowest terms support the Board's finding that petitioner engaged in fraud or deceit regarding his 2002 application. (Tr. at 64, 66, 115.)

In light of the petitioner's history of substance abuse and his lack of candor, the Board's inference that petitioner had a substance abuse addiction before his 28-day hospitalization is reasonable. (Tab 20 at 7.) The Board's decision cannot be said to be "unreasonable, unjust or unlawful in light of the record." Imagineering, Inc., 593 A.2d at 1053.

### IV. Board's authority to impose discipline for conduct occurring outside of Maine

The petitioner argues that the Board applied Maine law extraterritorially by finding the petitioner's theft of cocaine from the emergency room at Washington County Hospital in Maryland constituted "unprofessional conduct". (Pet'r. Br. at 13.); 32 M.R.S. § 3282-A(2)(F); (R. Tab 20 at 8.). The Board did not attempt to exercise authority over the petitioner's Maryland or Missouri licenses. The Board acted upon the petitioner's Maine medical license based upon the petitioner's conduct, some of which occurred outside of Maine.

The Board may consider such extraterritorial conduct in carrying out its purpose to "protect the public health and welfare" of Maine. 10 M.R.S. § 8008. The statute expressly includes acts occurring outside this state within its definition of unprofessional conduct. See, e.g., 32 M.R.S. 3282-A(1) ("The Board may deny a license or authorize a restricted license based on the record of the applicant in other states."); 5 M.R.S. § 5301(1) (authorizing the Board to "take into consideration criminal history record information from Maine or elsewhere"). The Board's decision restricts only the petitioner's Maine medical license, which is regulated pursuant to statute, by the Board. See, e.g., 32 M.R.S. §§ 3263-89. Because the Board has statutory authority to discipline

12

physicians licensed to practice medicine in Maine for acts that occur elsewhere, the Board did not exceed its authority in disciplining the petitioner.

Principles of comity, as argued by the petitioner, do not change this conclusion. The petitioner argues that the Board should have respected the decisions of Maryland, which took no action, and Missouri, which did not require probation. The principles of comity do not require the Board to recognize the decisions of the Maryland and Missouri boards.[10] See Society of Lloyd's v. Baker, 673 A.2d 1336, 1338 (Me. 1996) (citing Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3rd Cir. 1971)) ("Although more than mere courtesy and accommodation, comity does not achieve the force of imperative or obligation.").

V.   Costs

Finally, the petitioner argues that the Board abused its discretion by ordering petitioner to pay costs of the hearing because: (1) the Board punished the petitioner for exercising his right to hearing; and (2) the Board's decision was "more favorable" than a pre-hearing consent decree offered.  (Pet'r Br. at 17.)  Upon finding a violation, the Board is authorized to "assess the licensed person or entity for all or part of the actual expenses incurred by the board . . . for investigations and enforcement duties performed." 10 M.R.S. § 8003-D.  The Board is required "to exercise its discretion reasonably in imposing costs." See Zegel v. Bd. of Soc. Worker Licensure, 2004 ME 31, ¶ 19, 843 A.2d 18, 23 (finding Board exceeded its discretion by imposing additional costs without addressing licensee's capacity to pay).  The Board did consider petitioner's ability to pay costs and did not impose a fine. (See Tr. at 156, 171-72.)  Moreover, the petitioner's argument that the Board punished the petitioner for rejecting a pre-hearing

---

[10] It is unclear whether the Missouri and Maryland boards' decisions addressed the same issues that formed the bases for the Board's finding that petitioner violated Maine statutory provisions.

consent decree offered to him and exercising his right to a hearing is not supported by the record or case law. See Zegel, at ¶ 23, 843 A.2d at 24 ("We also reject Zegel's argument that the proposed consent agreement provides the parameters, or even a context for determining sanctions after the hearing.").

The entry is

> The Decision of the Maine Board of Licensure in Medicine
> is AFFIRMED.

Date: December 5, 2008

Nancy Mills
Justice, Superior Court

14

Date Filed __3/25/08__ __Kennebec__ Docket No. __AP-08-23__
County

Action __80C__

J. Mills

SCOTT L. DIERING, MC vs. MAINE BOARD OF LICENSURE IN MEDICINE

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Charles Gilbert, III, Esq.<br>PO Box 2339<br>Bangor, Maine  04402-2339 | Dennis Smith, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

| Date of Entry | |
|---|---|
| 3/25/08 | Rule 80C complaint and summary sheet filed. s/ Gilbert, Esq. |
| 3/31/08 | Appearance and Statement of Position Pursuant to 5 MRSA §11005, filed 3/28/08.  s/Smith, Esq. |
| 4/17/08 | Certification Of Administrative Record, Agency Record, filed 4/16/08. **(Record in vault)** |
| ---- | Notice and Briefing Schedule mailed to attorneys of record. |
| 6/6/08 | Petitioner's Rule 80C Brief on Appeal, filed. s/Gilbert, Esq. (filed 5/27/08) |
| 6/23/08 | Brief of Respondent, filed. s/Smith, AAG |
| 7/1/08 | Plt's consent motion to enlarge time which to file reply brief filed by Atty Gilbert. |
| 7/15/08 | ORDER, Mills, J.  (7/14/08)<br>The time in which Petitioner may file his reply brief is enlarged to 7/21/08.<br>Copy to attorneys of record. |
| 7/25/08 | Petitioner's Motion To File Late Brief, filed 7/24/08.  s/Gilbert, Esq. |
| 7/25/08 | Petitioner's Rule 80C Reply Brief, filed 7/24/08.  s/Gilbert, Esq. |
| 7/30/08 | ORDER, Mills, J.  (7/28/08)<br>On Petitioner's motion and for cause shown, without objection, Petitioner is allowed to file his Reply Brief late.<br>Copy mailed to attorneys of record. |
| 9/3/08 | Plaintiff's Request For Oral Argument, filed 8/28/08.  s/Gilbert, Esq. |
| 12/5/08 | DECISION AND ORDER, Mills, J.<br>The Decision of the Maine Board of Licensure in Medicine is AFFIRMED.<br>Copy to attorneys of record.<br>Copy to Garbrecht Law Library, Deborah Firestone, Goss Data Service. |