## 2008 ME 27
## TOWN OF FRYE ISLAND et al.
### v.
## STATE of Maine et al.

Supreme Judicial Court of Maine.

Argued: Jan. 17, 2008.
Decided: Feb. 7, 2008.

Marshall J. Tinkle, Esq. (orally), Leonard W. Langer, Esq., Tompkins, Clough,

Hirshon & Langer, P.A., Portland, ME, for the Town of Frye Island, James Kuiken, Grace Morin and John Crosby.

Sarah A. Forster, Asst. Atty. Gen. (orally), Six State House Station, Augusta, ME, for the State of Maine.

Peter C. Felmly, Esq. (orally), Melissa A. Hewey, Esq., Drummon Woodsum & MacMahon, Portland, ME, for Maine School Administrative District No. 6.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] The Town of Frye Island and three of its residents appeal from a judgment entered in the Superior Court (Cumberland County, *Delahanty, J.)* finding P. & S.L.2001, ch. 8, and P.L.2005, ch. 2, § D–69, constitutional. The Town and residents argue that both laws violate numerous provisions of the Maine and United States Constitutions. We affirm the judgment.

## I.  BACKGROUND

[¶ 2] The Town of Frye Island is located in Sebago Lake and, prior to 1998, was a part of the Town of Standish. It is also a member of Maine School Administrative District 6. From the first Monday of November until the last Friday of April every year, Frye Island essentially shuts down: the water system is drained, the ferry and mail services are suspended, and the public buildings and roads are closed. Accordingly, no school-age children reside on the island during the school year, and no residents of the island have ever attended M.S.A.D. 6 schools.

[¶ 3] In 1997, Frye Island sought to secede from the Town of Standish and become an independent municipality, and a bill was introduced in the Maine Legislature to allow this result. Discussions between Frye Island and Standish resulted in a "Memorandum of Understanding" between the parties. In the memorandum, Standish agreed to remain neutral regarding the bill of secession so long as, among other conditions, Frye Island remained a part of M.S.A.D. 6, of which Standish was also a member, and continued to contribute toward its support. The memorandum provided that the bill of secession adequately addressed this condition.

[¶ 4] The Legislature subsequently passed the bill of secession as private and special legislation, allowing for the secession of Frye Island from Standish subject to voter approval by the residents of Frye Island. P. & S.L.1997, ch. 41. The bill of secession provided, in pertinent part, that upon secession, Frye Island "remains in the School Administrative District 6 or its successor and pays its proportional share of costs, unless or until such time as it withdraws from the school administrative district in accordance with applicable state law." *Id.* § A–8. The residents of Frye Island thereafter unanimously voted to secede from Standish and became the independent Town of Frye Island in 1998.

[¶ 5] In 2000, pursuant to the applicable statutory process then in effect, *see* 20–A M.R.S. § 1405 (2006),[1] residents of the Town signed a petition to withdraw from M.S.A.D. 6 and held a public hearing on the issue, after which the residents voted unanimously in favor of withdrawal. The Town thereafter submitted a draft withdrawal agreement to the State Department of Education and M.S.A.D. 6 for approval, as required by section 1405.

[¶ 6] Less than a month later, and before the withdrawal agreement had been

---

1. Title 20–A M.R.S. § 1405 has since been repealed. PX.2007, ch. 240, § XXXX–12 (effective June 7, 2007).

acted upon, the Legislature passed emergency legislation titled "An Act to Clarify the Act of Separation of Frye Island from the Town of Standish." P. & S.L.2001, ch. 8 (effective April 11, 2001) (hereinafter L.D. 500). L.D. 500 deleted the language in the bill of secession that allowed the Town to later withdraw from the school administrative district "in accordance with applicable state law." *Id.* § 1. L.D. 500 also provided that the Town could not withdraw from M.S.A.D. 6 "unless such withdrawal is first authorized by further amendment to this chapter." *Id.* § 2. Accordingly, the Town remained part of M.S.A.D. 6.

[¶ 7] In 2004, the Legislature established a new formula for allocating the cost of education between the member municipalities of state school districts. P.L.2003, ch. 712, § 17 (*codified as amended at* 20–A M.R.S. §§ 15688, 15689 (2007)). Pursuant to the new formula, the cost of education in each school district would be divided among member municipalities according to the percentage of students each municipality sent to schools in that district. *Id.* Under this cost-sharing formula, the Town of Frye Island's expected contribution to M.S.A.D. 6 would have been zero dollars.

[¶ 8] In early 2005, the Legislature passed L.D. 1, which contained the following section that expressly excepted the municipalities in M.S.A.D. 6 from the new general cost-sharing formula:

> [T]he provisions of the Maine Revised Statutes, Title 20–A, section 15688, subsection 2 do not apply in determining the local cost of education of member municipalities in Maine School Administrative Districts No. 6 and No. 44.[2] The cost-sharing formulas established be-

tween the member municipalities in these 2 school administrative districts prior to January 1, 2005 remain in effect until the formulas are changed. . . .

P.L.2005, ch. 2, § D–69 (hereinafter L.D. 1).

[¶ 9] The Town and residents James Kuiken, Grace Morin, and John Crosby (collectively, "Kuiken") filed a complaint against the State in December 2005 seeking a declaratory judgment that L.D. 500 and L.D. 1 violate numerous provisions of the Maine and United States Constitutions, including the due process, equal protection, contract, equal taxation, special legislation, and emergency legislation clauses. M.S.A.D. 6 was subsequently permitted to intervene in the case pursuant to M.R. Civ. P. 24. The Superior Court determined, based upon an agreed statement of facts submitted by the parties, that both laws were constitutional. This appeal followed.

## II. DISCUSSION

[¶ 10] Where the facts of a case are not in dispute, such as where it has been submitted on an agreed statement of facts, we review a judgment for errors of law only. *See City of Bangor v. Diva's, Inc.,* 2003 ME 51, ¶ 10, 830 A.2d 898, 902; *Trask v. Devlin,* 2002 ME 10, ¶ 14, 788 A.2d 179, 182. Questions of law are subject to de novo review. *Roberts v. Roberts,* 2007 ME 109, ¶ 6, 928 A.2d 776, 778.

### A. L.D. 500's Revision of the Bill of Secession

[¶ 11] The Town and Kuiken argue that L.D. 500 violates numerous provisions of the Maine and United States Constitutions.[3] Because we conclude that

---

**2.** M.S.A.D. 44 contains the Town of Newry, which is located near Sunday River ski resort. The parties' agreed statement of facts provides that Newry sends only thirty-two students to M.S.A.D. 44 schools, but has relative-

ly high property valuations and many out-of-state property owners.

**3.** It is questionable whether the Town itself has protectible rights under the due process,

their challenge to this statute has been rendered moot by subsequent legislative action, we do not reach these arguments.

[¶ 12] "[C]ourts should decline to decide issues which by virtue of valid and recognizable supervening circumstances have lost their controversial vitality." *State v. Dhuy*, 2003 ME 75, ¶ 6, 825 A.2d 336, 340 (quotation marks omitted). In the present case, subsequent to the filing of the complaint and just prior to the Superior Court's judgment, the Legislature repealed 20–A M.R.S. § 1405, thereby eliminating the only provision of state law allowing a municipality to petition for withdrawal from a school district. *See* P.L. 2007, ch. 240, § XXXX–12 (effective June 7, 2007). The Town and Kuiken's challenge to L.D. 500 rests upon their view that the law is unconstitutional because it eliminated the Town's ability to withdraw from M.S.A.D. 6. Because section 1405, the only state law allowing for the withdrawal of a town from a school district, has been repealed, no decision of this Court could presently afford the Town effective relief. Accordingly, the challenge to L.D. 500 is moot, and we turn to consider the separate challenge to L.D. 1.

B. L.D. 1 and the Exemption of the Town from the New School Funding Formula

[¶ 13] The Town and Kuiken contend that L.D. 1 violates the equal protection clauses of the Maine and United States Constitutions. A facial challenge to the constitutionality of a statute is a question of law subject to de novo review, and the party challenging the statute bears the burden of showing constitutional infirmity

by strong and convincing reasons. *See State v. Falcone*, 2006 ME 90, ¶ 5, 902 A.2d 141, 142; *Passamaquoddy Water Dist. v. City of Eastport*, 1998 ME 94, ¶ 10, 710 A.2d 897, 900.

[¶ 14] The equal protection clause of the Maine Constitution provides that "[n]o person shall ... be denied the equal protection of the laws...." ME. CONST. art. I, § 6–A. The United States Constitution provides similarly, and the two clauses provide co-extensive protection. *See* U.S. CONST. amend. XIV, § 1; *Sch. Admin. Dist. No. 1 v. Comm'r, Dep't of Educ.*, 659 A.2d 854, 857 (Me.1995). We apply a two-step test to determine whether a statute violates the equal protection clause. First, the party challenging the statute must show that similarly situated persons are not treated equally under the law. *See Mahaney v. State*, 610 A.2d 738, 743 (Me.1992). Where this step is met, the Court must then determine what level of scrutiny to apply. *See Sch. Admin. Dist. No. 1*, 659 A.2d at 857. Where, as here, the challenged legislation does not involve a fundamental right or a suspect class, the test under this step is whether the statute is rationally related to a legitimate state interest. *Id.*

[¶ 15] Our equal protection analysis in this case must also account for the fact that, in our constitutional scheme, the Legislature is granted broad authority to legislate in the area of public education:

A general diffusion of the advantages of education being essential to the preservation of the rights and liberties of the people; to promote this important ob-

---

equal protection, and contract clauses because the Town of Frye Island is a creature of the State. *See Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or

immunities under the federal constitution which it may invoke in opposition to the will of its creator."). We need not address this question, however, because the right of the three individual plaintiffs to assert these claims is clear.

ject, the Legislature are authorized, and it shall be their duty to require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools . . . ."

ME. CONST. art. VIII, pt. 1, § 1. Pursuant to this constitutional authority, the Legislature is required to "enact the laws that are necessary to assure that all school administrative units make suitable provisions for the support and maintenance of the public schools." 20–A M.R.S. § 2(1) (2007); *see also Shaw v. Small,* 124 Me. 36, 40, 125 A. 496, 498 (1924) ("[S]tatutes relating to public schools should receive a liberal construction in aid of their dominant purpose which is universal elementary education."). With this framework established, we turn to examine the Town's equal protection challenge to L.D. 1.

[¶ 16] The Town and Kuiken argue that L.D. 1 violates equal protection because there are other towns in the State that, like Frye Island, have relatively high property values and few students but, unlike Frye Island, are not exempt from the general cost-sharing formula of 20–A M.R.S. § 15688. The record in this case, however, does not support this contention. The agreed statement of facts submitted by the parties contains evidence of only one other town, Newry, that is arguably similarly situated to Frye Island. Newry is located in M.S.A.D. 44, and thus, pursuant to L.D. 1, is also excluded from the general cost-sharing formula of section 15688. *See* P.L.2005, ch. 2, § D–69. There is no other information provided in the agreed statement of facts from which one can conclude that the Town of Frye Island

is or is not similarly situated to other municipalities in Maine. Accordingly, the Town and Kuiken have not met their burden of showing that there are similarly situated towns that are treated differently under the law and their equal protection challenge to L.D. 1 must fail.

[¶ 17] Even if the Town and Kuiken could show that other similarly situated towns were treated unequally under the law, L.D. 1 passes rational basis scrutiny. The State contends that not exempting M.S.A.D. 6, and therefore the Town, from the general cost-sharing formula of section 15688 would cause a severe shortfall in the budget of that district. Because addressing this concern clearly falls within the Legislature's authority and duty under the Maine Constitution to provide for public education, we have no difficulty concluding that L.D. 1 is also rationally related to a legitimate state interest.[4]

The entry is:

Judgment affirmed.

---

4. The Town and Kuiken also argue that L.D. 1 violates the due process and contract clauses of the Maine and United States Constitutions. We find these contentions without merit and do not separately address them. In addition, the Town and Kuiken contend that L.D. 1 violates the special legislation clause of the Maine Constitution, ME. CONST. art. IV, pt. 3, § 13. This contention is also without merit because L.D. 1 is a general law, not a special law.