2008 ME 89

**In re DUSTIN C. et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Dec. 11, 2007.

Decided: May 29, 2008.

G. Steven Rowe, Attorney General Nora Sosnoff, Assistant Attorney General, Augusta, ME, for Department of Health and Human Services.

Harold J. Hainke, Esq., Whitefield, ME, for the mother.

Mary Dionne, Esq., Augusta, ME, for Guardian Ad Litem.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

Majority: CLIFFORD, ALEXANDER, MEAD, and GORMAN, JJ.

Dissent: SAUFLEY, C.J., and LEVY, J.

CLIFFORD, J.

[¶ 1] The mother of Dustin C. and Skylar C. appeals from an order of the District Court (Augusta, *Laverdiere, J.*), appointing the maternal grandparents of the children as permanency guardians, pursuant to 22 M.R.S. § 4038–C(1–2) (2007).[1] Specifically, the mother contends that the court erred in appointing the permanency guardians, and in determining that she did not overcome the presumption of 22 M.R.S. § 4035(2–A)(B)(2) (2007).[2] Be-

---

1. Pursuant to 22 M.R.S. § 4038–C (2007), in a child protection proceeding the District Court may appoint a permanency guardian or guardians to care for a child as part of a permanency plan.

2. Title 22 M.R.S. § 4035(2–A)(B)(2) provides that in a child protection proceeding in an adjudication as to jeopardy, there is a rebuttable presumption that a parent would create a situation of jeopardy if that parent allows,

cause we agree with the Department of Health and Human Services that the statute provides the mother no right to appeal the order appointing the permanency guardians, we dismiss the appeal.

[¶ 2] In this child protection matter, the District Court acted on a petition filed by the Department and, pursuant to 22 M.R.S. § 4035(2) (2007), entered an order of jeopardy as to the father and the mother on July 29, 2004. No appeal was taken from that order. The Department was granted custody, and the children were placed with their maternal grandparents. The Department alleges that the parents have a history of substance abuse and domestic violence. The mother has shown a pattern of poor decision-making for herself and her children, specifically leaving her children in the care and custody of a convicted sex offender, and moving in with a convicted sex offender knowing that she will not be able to attempt reunification with her children so long as she resides with that person. In a judicial review and permanency planning order, entered on June 29, 2006, the court appointed the maternal grandparents as permanency guardians pursuant to 22 M.R.S. § 4038–C(1–2), concluding the mother did not overcome the presumptions set out in 22 M.R.S. § 4035(2–A)(B)(2) that she would create a situation of jeopardy if she had custody of the children. The mother filed an appeal from the order. The Department filed a motion to dismiss the appeal as interlocutory.

[¶ 3] In support of its motion to dismiss this appeal, the Department contends that the mother has no statutory right to take this appeal, and urges us to dismiss the appeal pursuant to 22 M.R.S. § 4006 (2007), which provides in part:

A party aggrieved by an order of a court entered pursuant to section 4035, 4054 or 4071 may appeal directly to the Supreme Judicial Court sitting as the Law Court and such appeals are governed by the Maine Rules of Civil Procedure, chapter 9.

. . . .

Orders entered under this chapter under sections other than section 4035, 4054 or 4071 are interlocutory and are not appealable.

Although 22 M.R.S. § 4035 is implicated in the District Court's order, the mother's appeal is from an order appointing permanency guardians, entered pursuant to 22 M.R.S. § 4038–C(1–2).

[¶ 4] In enacting 22 M.R.S. § 4038–C, and in creating the position of permanency guardian, the Legislature is presumed to be aware that section 4006 restricted appeals that can be taken in child protection proceedings, and that child protection orders entered pursuant to sections other than sections 4035, 4054, and 4071, are designated as interlocutory and "are not appealable." *See Stockly v. Doil,* 2005 ME 47, ¶ 14, 870 A.2d 1208, 1213 (Legislature presumed to be aware of state of the statutory and decisional law when it enacts new legislation). Because the order in this case was entered pursuant to section 4038–C, the mother has no statutory right to file this appeal. *See In re Johnna M.,* 2006 ME 46, ¶ 7, 903 A.2d 331, 332.

[¶ 5] The mother also contends that if she is not allowed to proceed with her appeal, she will be denied her rights to due process, and that because other parents are allowed to appeal similar orders in other proceedings involving guardian-

encourages, or fails to prevent contact between the child and a person who has been adjudicated in an action under Title 22, chap-

ter 1071 of sexually abusing a minor child. The parent may produce evidence to rebut the presumption.

ship and residence of children, the denial of her right to appeal this order appointing permanency guardians, denies her the right to equal protection of the law. U.S. CONST, amend. XIV, § 1; ME. CONST, art. I, § 6–A. We are unpersuaded by the mother's contentions.

[¶ 6] As we noted in *Rice v. Amerling:*

The appellate jurisdiction of the Law Court and its power to review cases, are entirely and exclusively those plainly conferred by statute. The right of appeal is not a constitutional one; nor does it arise under the common law; it is purely statutory. The Legislature, in granting a right to appeal in certain cases, may restrict, limit or otherwise condition its availability as it sees fit.

433 A.2d 388, 390–91 (Me.1981) (quotation marks and internal citations omitted).

[¶ 7] As to the mother's contention that the statutory limitation on her right to appeal has deprived her of due process, her right to procedural due process in this context requires "an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect." *See In re Alexander D.,* 1998 ME 207, ¶ 13, 716 A.2d 222, 226 (quotation marks omitted). The mother was given notice of the judicial review and permanency planning hearing, was represented by counsel at the hearing, and was given the opportunity to rebut the Department's evidence and present her own evidence. Moreover, pursuant to 22 M.R.S. § 4038–C(6), a parent can bring a petition to terminate the permanency guardianship, or petition for rights of contact with the children, a procedure that the mother has already utilized in this case. Given the procedural safeguards afforded her under 22 M.R.S. § 4038–C, the mother

has not been deprived of procedural due process.

[¶ 8] The mother's additional contention that she is being denied equal protection of the law with regard to her fundamental right to the care, custody, and control of her children is also unpersuasive. The mother points out that a parent has a statutory right to appeal the appointment of a guardian pursuant to 18–A M.R.S. § 5–204 (2007), and to appeal the award of primary residence or visitation pursuant to 19–A M.R.S. § 1653(2) (2007). She argues that if she has no right to appeal the appointment of a permanency guardian pursuant to 22 M.R.S. § 4038–C, she has been denied equal protection of the law. The appointment of a permanency guardian is, however, embedded in an overall statutory framework quite different and apart from guardianship pursuant to 18–A M.R.S. § 5–204 or residence and visitation pursuant to 19–A M.R.S. § 1653(2), and the mother is not similarly situated with parents seeking to appeal an adverse ruling pursuant to 18–A M.R.S. § 5–204 or 19–A M.R.S. § 1653(2), within the meaning of the Equal Protection Clause. *See Town of Frye Island v. State of Maine,* 2008 ME 27, ¶ 14, 940 A.2d 1065, 1069. That the Legislature has provided for appeals to the Law Court under titles 18–A and 19–A, does not elevate those statutory appellate rights to rights based on the constitution.[3]

The entry is:

Appeal dismissed.

LEVY, J., with whom SAUFLEY, C.J., Joins, dissenting.

[¶ 9] Although I join in the majority's statutory and due process analysis, I respectfully dissent because I conclude that

---

**3.** The Legislature is, of course, free to amend 22 M.R.S. § 4006 (2007), as it sees fit.

depriving the mother of Dustin C. and Skylar C. the right to appeal from an order appointing a permanency guardian is an unconstitutional denial of equal protection of the law.

### A. Equal Protection and Appellate Review

[¶ 10] As noted by the majority, neither the Maine nor the Federal Constitution imposes a general obligation on the State to establish an avenue of appellate review. *See Harrington v. Harrington,* 269 A.2d 310, 314 (Me.1970). Once a right of appeal is established, however, " 'it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause.' " *M.L.B. v. S.L.J.,* 519 U.S. 102, 114, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (quoting *Lindsey v. Normet,* 405 U.S. 56, 77, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972)).[4] Once the State establishes an avenue of appeal in a discrete area of law, that avenue "must be kept free of unreasoned discriminatory distinctions that can only impede open and equal access to the courts." *Harrington,* 269 A.2d at 314.

[¶ 11] When a party asserts that a statute offends the principles of equal protection, we apply a multi-step analysis to determine whether the Maine and Federal Constitutions have been violated. *Town of Frye Island v. State,* 2008 ME 27, ¶ 14, 940 A.2d 1065, 1069. "First, the party challenging the statute must show that similarly situated persons are not treated equally under the law." *Id.* If we determine that similarly situated persons are treated differently, we must then determine whether the statute implicates either a fundamental right or a suspect class. *See id.* If the

statute burdens a suspect class or fundamental right, the statute must be narrowly tailored to achieve a compelling governmental interest. *See Anderson v. Town of Durham,* 2006 ME 39, ¶ 29, 895 A.2d 944, 953.

### B. Dissimilar Treatment of Similarly Situated Persons

[¶ 12] Since 1981, the Probate Code has governed court appointments of a guardian for a minor. *See* 18-A M.R.S. §§ 5-201 to 5-212 (2007) (originally enacted by P.L.1979, ch. 540, § 1). In 2005, however, the Legislature enacted 22 M.R.S. § 4038-C (2007), which amended the Child and Family Services and Child Protection Act (Child Protection Act) to create the position of a permanency guardian. P.L.2005, ch. 372, § 6. As a consequence, Maine now has two alternative statutory frameworks for appointing a guardian for a minor. *See* 18-A M.R.S. §§ 5-201 to 5-212; 22 M.R.S. § 4038-C. Although the court's appointment of a guardian pursuant to the Child Protection Act involves a number of procedural steps not found in a probate proceeding, the two statutory frameworks serve an identical purpose. Indeed, the Child Protection Act provides that a child's permanency plan may provide for a guardian under either statute. 22 M.R.S. § 4038-B(4)(A)(3) (2007). Regardless of which process gives rise to the guardianship, the powers and duties of the guardian remain the same: "A permanency guardian has all of the powers and duties of a guardian of a minor pursuant to Title 18-A, section 5-209." 22 M.R.S. § 4038-C(2).

[¶ 13] The fact that there are two separate processes that may result in the ap-

---

4. In *M.L.B. v. S.L.J.,* the Supreme Court found unconstitutional a statute that conditioned a parent's right to appeal from a judgment terminating parental rights on the parent's ability to pay the transcription costs. 519 U.S. 102, 106, 108, 128, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996).

pointment of a guardian for a child is of no practical consequence to a parent whose child is placed in guardianship over that parent's objection. Regardless of which process is employed, the parent's fundamental interest in the care, custody, and control of his or her child is impaired. *See, e.g., In re Adoption of L.T.M.*, 214 Ill.2d 60, 291 Ill.Dec. 645, 824 N.E.2d 221, 230–31 (2005) (finding parents facing termination of parental rights under alternative statutory frameworks to be similarly situated).[5] Therefore, for equal protection purposes, a parent challenging a guardianship appointment under the Probate Code, 18–A M.R.S. § 5–204, and a parent challenging an appointment under the Child Protection Act, 22 M.R.S. § 4038–C, are similarly situated.

## C. Parenting as a Fundamental Right

[¶ 14] Once we determine that government action treats similarly situated persons differently, we next look to whether the action implicates a fundamental right or suspect class. *See Town of Frye Island,* 2008 ME 27, ¶ 14, 940 A.2d at 1069. When the statute challenged on equal protection grounds implicates a fundamental constitutional right or involves an inherently suspect classification such as race, it is subject to analysis under the strict scrutiny standard. *See Anderson,* 2006 ME 39, ¶ 29, 895 A.2d at 953.

[¶ 15] "[P]arents have a fundamental liberty interest to make decisions concerning the care, custody, and control of their children." *Rideout v. Riendeau,* 2000 ME 198, ¶ 18, 761 A.2d 291, 299 (quotation marks omitted). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Because the permanency guardian statute directly implicates this fundamental parental interest, the statutory classification must be narrowly tailored to serve a compelling state interest. *See Conlogue v. Conlogue,* 2006 ME 12, ¶ 16, 890 A.2d 691, 697.

[¶ 16] In this instance, the State does not even attempt to identify a state interest sufficiently compelling to justify its denial of the right to appeal the appointment of a guardian where the appointment is made pursuant to 22 M.R.S. § 4038–C, arguing only that a parent challenging the appointment of a permanency guardian is not similarly situated to a parent challenging the appointment of a guardian in a probate proceeding. Indeed, there is no evidence that section 4038–C's exclusion from section 4006's list of orders subject to appeal amounts to anything more than an oversight on the part of the Legislature.[6]

---

**5.** Courts have also found parents facing termination of parental rights under alternative statutory frameworks to be similarly situated where one statute allowed the state to seek termination while the other allowed a private individual to seek the termination. *See In re S.A.J.B.,* 679 N.W.2d 645, 650 (Iowa 2004); *In re Adoption of K.A.S.,* 499 N.W.2d 558, 560–61, 566 (N.D.1993). Nor have other states accepted the argument that different periods of neglect required under alternative statutes provide a basis for finding that parties are not similarly situated. *See Zockert v. Fanning,* 310 Or. 514, 800 P.2d 773, 777

(1990) (noting that the difference "is of no practical consequence to that parent").

**6.** The history of 22 M.R.S. § 4006 (2007), which predates 22 M.R.S. § 4038–C (2007), by more than two decades, supports this conclusion.

When initially enacted, section 4006 allowed any party aggrieved by *an order* of the court "under this chapter" to appeal to the Superior Court. P.L.1979, ch. 733, § 18. In 1983, section 4006 was amended to allow a party to appeal directly to this Court any

[¶ 17] Because there is no legitimate state interest, much less a compelling one, to justify treating a parent challenging the appointment of a guardian pursuant to section 4038–C differently from a parent challenging an appointment under the Probate Code, we need not consider whether section 4006 is narrowly tailored. Accordingly, I would hold that section 4006 violates the Equal Protection Clause of the Maine Constitution.

## D. Conclusion

[¶ 18] A court presented with governmental action that violates the Equal Protection Clause faces two remedial alternatives: it may either withdraw the benefit from all similarly situated parties or it may extend its coverage to those aggrieved by its exclusion. *Heckler v. Mathews*, 465 U.S. 728, 738, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). Because the exclusion of section 4038–C appears to be merely a legislative oversight, we should extend the statutory right of appeal to any parent challenging a court's appointment of a guardian for that parent's child.

---

order "under subchapter VI," which involves termination of parental rights, *see* 22 M.R.S. §§ 4050–4058 (2007); any other order could still be appealed to the Superior Court. *See* P.L.1983, ch. 772, § 3.

In 1998, the Legislature again amended section 4006, passing an Act entitled "An Act to Require Expeditious Action in Child Protection Cases." P.L.1997, ch. 715, pt. A § A–3. This Act, the purpose of which was to require "expeditious action in child protection cases," L.D. 2246 (118th Legis.1998), *expanded* the scope of orders that could be appealed directly to this Court to include jeopardy orders and medical treatment orders. P.L.1997, ch. 715, pt. A § A–3; *see also* 22 M.R.S. §§ 4006, 4035, 4071 (2007). In doing so, however, the Legislature replaced the 1983 amendment's broad "subchapter" language with direct cites to the exact statutes authorizing the granting of the relevant orders. Therefore, instead of allowing direct appeal from any order of the court "under subchapters IV, VI, or VIII," a drafting that would have encompassed 22 M.R.S. § 4038–C when it was enacted in 2005, the Legislature stated that direct appeals are authorized for orders issued under sections 4035, 4054, and 4071.

There is no indication in the legislative record associated with the enactment of section 4038–C that the Legislature considered whether there should be a right of appeal following the appointment of a permanency guardian.