STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-44

HARPSWELL COASTAL ACADEMY,
et al.,

        Plaintiffs

v.

M.S.A.D. 75,

        Defendant

ORDER

STATE OF MAINE
Cumberland. ss. Clerk's Office

DEC 19 2016

RECEIVED

Before the court is a motion for summary judgment by defendant M.S.A.D. 75.

In this action plaintiffs Harpswell Coastal Academy, Wesley Withers, Carrie Withers, and John Doe seek to establish that students at charter schools have a statutory and constitutional right to try out for athletic teams and other extracurricular activities at their local public schools even when the local school superintendent has determined that students at the local public schools should have first priority.

The specific dispute that gave rise to this action was a decision by MSAD 75 Superintendent Bradley Smith that the son of plaintiffs Wesley and Carrie Withers, a student attending Harpswell Coastal Academy who is designated as "John Doe" in this action, would not be allowed to try out for the 8th grade basketball team at Mt. Ararat Middle School.

In an order dated January 16, 2016 the court denied a motion by plaintiffs for a stay of administrative action and a preliminary injunction. Subsequently, in an order dated June 16, 2016 the court ruled against plaintiffs' Rule 80B appeal from the Superintendent Smith's decision.

The remaining issues in this case are plaintiffs' claim in Count II of the complaint for a declaratory judgment that respondent MSAD 75's policy violates 20-A M.R.S. § 2415 and

plaintiffs' section 1983 claim in Count III that John Doe has been deprived of equal protection under the U.S. Constitution.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

In this case plaintiffs have admitted virtually all of the statements in MSAD 75's Statement of Material Facts (SMF), and the court concludes that all material facts are undisputed. Although plaintiffs have raised certain objections to the evidentiary support offered for two of the assertions in MSAD 75's SMF, in the court's view those objections are either not well-founded or verge on the hypertechnical.[1] In any event, the court would reach the same result even if it disregarded those assertions in their entirety.

_____

[1] Plaintiffs argue that defendants cannot rely on an April 22, 2015 letter from MSAD 75 Superintendent Smith because it was not stipulated to by the parties or authenticated by any affidavit. See Plaintiffs' Response to Defendant's SMF ¶ 23. However, plaintiffs do not dispute the statement by MSAD 75 that the parties had agreed that their previously filed Joint Stipulation of Facts – which includes Smith's April 22, 2015 letter (Stipulation ¶ 21) – would be binding on the parties and would be part of the summary judgment record. See the introduction to MSAD 75's Statement of Material Facts and MSAD 75's

2

The essential facts are that one or more students at Harpswell Coastal Academy, a charter school that enrolls students in grades 6-11, have sought to try out for the Mt. Ararat athletic teams but were denied the opportunity to try out by Bradley Smith, Superintendent of MSAD 75. The students who have sought to try out for Mt. Ararat athletic teams reside within MSAD 75. Harpswell Coastal Academy does currently not offer extracurricular athletic activities or field athletic teams.

The decision by Superintendent Smith not to let the Harpswell Coastal Academy students try out was based on a July 2015 policy adopted by MSAD 75 which states that an MSAD 75 school

> does not have capacity to provide a charter school student the opportunity to participate in extracurricular activity when all available slots and positions for the activity are taken by regularly enrolled students. A student enrolled in MSAD 75 schools will not be denied the opportunity to participate in favor of a student enrolled in a charter school.

In cases where not enough regular Mt. Ararat students have sought to try out for a team to fill all the existing slots, Superintendent Smith has allowed Harpswell Coastal Academy students to participate. Defendant's SMF ¶ 28 (admitted).

Plaintiffs are not seeking relief that would require MSAD 75 to expand the rosters of existing teams to accommodate Harpswell Coastal Academy students. *See* Petitioners' Rule 80B brief at 8 n.3 ("Plaintiffs do not challenge MSAD 75's right to determine the size of its extracurricular teams"). They are instead seeking to require MSAD 75 to allow charter school

---

Amended Motion for Summary Judgment at 2 n.1. Plaintiffs also argue that the legislative file appended to the Carey Affidavit has not been properly authenticated. While they may or may not be correct that legislative files do not constitute factual evidence for purposes of summary judgment, courts routinely take judicial notice of those files as part of a statute's legislative history. *E.g., Blanchard v. MDOT*, 2002 ME 96, ¶¶ 24-25, 798 A.2d 1119; *In re Opinion of Justices*, 281 A.2d 321, 324 (Me. 1971).

The court does agree with plaintiffs that MSAD 75's responses in its Reply SMF that it is "unable to admit or deny" factual assertions in plaintiffs' Statement of Additional Material Facts should be deemed to be admissions. None of those admissions would affect the court's decision.

students to try out for the existing slots on the team in competition with public school students enrolled in MSAD 75.

Alleged Violation of 20-A M.R.S. § 2415 (Complaint Count II)

On this issue the court has twice considered the issue of whether MSAD's policy violates 20-A M.R.A. § 2415 and has nothing to add to its prior rulings. See order dated January 16, 2016 at 3-5; order dated June 16, 2016 at 3-7. Based on the discussion in those rulings, the court concludes that MSAD 75 is entitled to summary judgment on Count II of plaintiffs' complaint.

Alleged Violation of Equal Protection (Complaint Count III)

Count III of plaintiffs' complaint is a section 1983 claim that MSAD's policy violates equal protection. Faced with a claim that a governmental policy subjects similarly situated individuals to differential treatment, the court must first determine whether the policy involves either a fundamental right or a suspect class that has been found to trigger strict scrutiny.[2] If no fundamental rights or suspect classes are involved, the remaining question is whether the governmental policy at issue is rationally related to a legitimate governmental interest. *E.g., Town of Frye Island v. State*, 2008 ME 27 ¶ 15, 940 A.2d 1065; *Anderson v. Town of Durham*, 2006 ME 39 ¶ 29, 895 A.2d 944. Plaintiffs do not argue that fundamental rights or suspect classes are involved and apparently concede that rational basis scrutiny applies in this case. Plaintiffs' Opposition to Motion for Summary Judgment at 18.

---

[2] MSAD 75 argues that no differential treatment is involved here because the parents of students at Harpswell Coastal Academy chose for educational reasons to send their children to a school that does not have athletic teams. The court does not need to reach this argument because MSAD 75's policy would in any event survive rational basis review.

4

Under the rational basis standard, the burden is on the party challenging the government action to demonstrate that "there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals. *Anderson v. Town of Durham*, 2006 ME 39 ¶ 29. Accordingly, the plaintiffs have "the burden of proof to negative every conceivable basis" that might support MSAD's policy. *E. Perry Iron & Metal Co. v. City of Portland*, 2008 ME 10 ¶ 28, 941 A.2d 457, quoting *FCC v. Beach Communications*, 508 U.S. 307, 315 (1993). The Law Court's decision in *E. Perry Iron & Metal Co.* demonstrates that this deferential rule applies not just to state and federal legislative enactments but to local ordinances. And the U.S. Supreme Court's decision in *FCC v. Beach Communications* establishes that the relationship of a challenged policy to a legitimate governmental interest "is not subject to courtroom factfinding." 508 U.S. at 315.

As previously stated, if the decision were up to the court, it would allow Harpswell Coastal students to try out. Nevertheless, it cannot conclude that there is no rational relationship between MSAD 75's policy and a legitimate governmental interest. For every charter school student who might be given a place on a Mt. Ararat team, a regular Mt. Ararat student would have to be excluded. Extracurricular athletics are one of the benefits of public education. Bonds of friendship are formed on athletic fields, and coalescing to support school teams is a significant source of school pride and school community spirit. It is therefore rational to determine that, unless not enough regular Mt. Ararat students try out for a team, a Mt. Ararat team should be composed of classmates at the Mt. Ararat school.

MSAD 75 is therefore entitled to summary judgment on plaintiffs' equal protection claim.

The entry shall be:

      1. Defendant's motion for summary judgment on counts II and III of plaintiff's complaint is granted, and judgment is entered for defendant on this counts.

      2. Because the court ruled on Count I of plaintiffs' complaint in its June 16, 2016 order, this order shall constitute a final judgment on all the claims in this case.

      3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December 19, 2016

                              Thomas D. Warren
                              Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-44

HARPSWELL COASTAL ACADEMY,
et al.,

Petitioners

v.

ORDER

M.S.A.D. 75,

Respondent

Before the court is a Rule 80B appeal brought by Harpswell Coastal Academy, Wesley Withers, Carrie Withers, and John Doe.[1] Oral argument was held on May 24, 2016.

In this action petitioners seek to establish that students at charter schools have a statutory right to try out for athletic teams and other extracurricular activities at their local public schools. Specifically, petitioners bring a Rule 80B appeal from a decision by MSAD 72 Superintendent Bradley Smith not to allow the son of petitioners Wesley and Carrie Withers, a student attending Harpswell Coastal Academy who is designated as "John Doe" in this action, to try out for the 8th grade basketball team at Mt. Ararat Middle School.

In addition to their Rule 80B appeal, petitioners have asserted a claim for a declaratory judgment that respondent MSAD 75's policy violates 20-A M.R.S. § 2415 and a section 1983 claim that John Doe has been deprived of equal educational opportunity under the U.S. Constitution. The parties have agreed that the parties will have 45 days from the issuance of this

---

[1] At an earlier point in the case, respondent MSAD 75 questioned the standing of Harpswell Coastal Academy to seek review of the action that is challenged in this case. Because the standing of the remaining petitioners is not being challenged, that issue need not be reached.

STATE OF MAINE
Cumberland, ss. Clerk's Office

JUN 17 2016

RECEIVED

order to complete discovery on those causes of action, which will then be in order for dispositive motions and/or trial.

Turning to the Rule 80B appeal, review under Rule 80B is for the purpose of determining whether there was an abuse of discretion, an error of law, or findings not supported by substantial evidence. *E.g., Camp v. Town of Shapleigh*, 2008 ME 53 ¶ 9, 943 A.2d 595. Petitioners base their claim in this case on the theory that the decision challenged was an error of law.

At the outset, there are several jurisdictional issues. Respondent MSAD 75 has noted those issues but expressly stated at oral argument that it is not seeking to avoid a decision. Moreover, under the circumstances of this case, the appeal raises the same issues as petitioners' request for a declaratory judgment.

Briefly stated, one problem with the Rule 80B appeal is that the Mt. Ararat 8th grade basketball season is long over.[2] Both sides agree, however, that this is a recurring issue and has apparently already recurred with John Doe, who this spring unsuccessfully sought to try out for the Mt. Ararat 8th grade baseball team. In the court's view, the specific 80B appeal is moot, although it is not disputed that there remains a live controversy for purposes of a declaratory judgment. Petitioners nevertheless contend that the "capable of repetition yet evading review" exception to mootness applies to 80B appeals as well as to their other claims.

The second problem with a Rule 80B appeal is whether an appeal in this case "is provided by statute or is otherwise available by law" as set forth in Rule 80B(a). No statute provides for an appeal in this case. Under Law Court precedent, Rule 80B review is "otherwise available" if it is in the nature of review formerly available under the common law extraordinary

---

[2] MSAD 75 correctly notes that to the extent that petitioners are challenging MSDA 75's adoption of the policy that led to Superintendent Smith's decision not to allow John Doe to try out for the 8th grade basketball team, that challenge was not brought within 30 days.

writs. *Lyons v. MSAD 43*, 503 A.2d 233, 236 (Me. 1986). Petitioners argue that review of the challenged decision by the Superintendent would have been available through *certiorari* because the decision was quasi-judicial. In the court's view, this is highly doubtful.

Nevertheless, assuming that the Rule 80B appeal is properly before the court, the court will affirm the decision of the Superintendent for the reasons set forth in its January 16, 2016 order denying petitioners' motion for a stay and/or preliminary injunction. As noted in that order, the governing statute provides in pertinent part as follows:

> If a public charter school student applies for and receives written approval from the superintendent of the school administrative unit of the noncharter public school or the superintendent's designee, who may withhold such approval, the public charter school student is eligible to participate in extracurricular activities not offered by the student's public charter school at the noncharter public school within the attendance boundaries of which the student's custodial parent or legal guardian resides or the noncharter public school from which the student withdrew for the purpose of attending a public charter school. The superintendent of the school administrative unit or the superintendent's designee may withhold approval only if the public charter school the student attends provides the same extracurricular or interscholastic activity or if the noncharter public school does not have the capacity to provide the public charter school student with the opportunity to participate in the extracurricular or interscholastic activity. If approval is withheld, the superintendent of the school administrative unit or the superintendent's designee shall provide a written explanation to the public charter school student or the student's parent or guardian stating the reason or reasons for the decision to withhold approval. If a public charter school student is allowed to participate in the noncharter public school's extracurricular activities, the public charter school student is eligible for extracurricular activities at the noncharter public school subject to eligibility standards applied to full-time students of the noncharter public school. A school administrative unit or noncharter public school may not impose additional requirements on a public charter school student to participate in extracurricular activities that are not imposed on full-time students of the noncharter public school . . . .

20-A M.R.S. § 2415(2) (emphasis added).

3

There is no dispute that Harpswell Coastal Academy did not have an 8th grade basketball team. In withholding approval for John Doe to try out for the Mt. Ararat 8th grade basketball team, Superintendent Smith was acting pursuant to a July 2015 policy adopted by MSAD 75 which states that an MSAD 75 school

> does not have capacity to provide a charter school student the opportunity to participate in extracurricular activity when all available slots and positions for the activity are taken by regularly enrolled students. A student enrolled in MSAD 75 schools will not be denied the opportunity to participate in favor of a student enrolled in a charter school.

Because the number of MSAD 75 students who tried out for the 8th grade basketball team exceeded the number of positions on the team, Superintendent Smith informed Mr. and Mrs. Withers that their son would not be allowed to try out.

Petitioners argue that the MSAD policy and Superintendent Smith's decision are based on an incorrect interpretation of state law.[3] At the outset, it bears emphasis that petitioners are not contending that MSAD has the capacity to increase the size of the Mt. Ararat teams in order to accommodate charter school students. *See* Petitioners' Rule 80B brief at 8 n.3 ("Plaintiffs do not challenge MSAD 75's right to determine the size of its extracurricular teams"). They instead contend that 20-A M.R.S. § 2415(a) must be interpreted to give charter school students the right to try out for selection to Mt. Ararat teams without requiring Mt. Ararat to expand those teams.

The statutory interpretation issue may be resolved by comparing the statutes governing participation in public school extracurricular activities by charter school students, private school students, and home-schooled students. The statute governing the eligibility of private school students to participate in public school extracurricular activities is virtually identical with the

---

[3] Petitioners also contend that the MSAD policy and the Superintendent's decision violate their constitutional rights. The court understands that they are saving their arguments on that issue for their section 1983 claim.

4

statute applicable to charter school students. It provides that private school students are eligible to participate in extracurricular activities at the local public school with the approval of the public school principal, who may withhold approval "only if the school does not have the capacity to provide the student with the opportunity to participate in the extracurricular activity." 20-A M.R.S. § 5021-A(1)(A).

In contrast, the statute governing participation in local school extracurricular activities by home schooled students expressly provides that "[s]tudents receiving home-school instruction are eligible to try out for extracurricular activities sponsored by the local school unit . . ." 20-A M.R.S. § 5021(5) (emphasis added). Although home-schooled students must apply in writing to engage in extracurricular activities, home-schooled students are not required to obtain any approval from a principal or school superintendent nor does their ability to try out depend on whether the local school has the capacity to provide home-schooled students with the opportunity to participate.[4]

The difficulty with petitioners' argument is that they are interpreting section 2415(2) as if it were identical to section 5021(5), affording charter school students the same unconditional right to try out for local school teams and other extracurricular activities as home schooled students. This interpretation would essentially eliminate the statutory ability of a local school to withhold approval when the local school "does not have the capacity to provide the public charter school student with the opportunity to participate." That statutory language cannot be overlooked. If the legislature had meant for charter school students to be able to try out for public school extracurricular activities without regard to the capacity of the local school to provide for such participation, it would have used the same language as it used in section 5021(5).

---

[4] All that is required is that home schooled students agree to abide by the same rules applicable to regularly enrolled students. *See* 20-A M.R.S. § 5021(5)(A)-(D).

At oral argument, petitioners relied on the language in § 2415(a) that a noncharter public school "may not impose additional requirements on a public charter school student to participate in extracurricular activities that are not imposed on full-time students of the noncharter public school." That sentence, however, follows the statutory language that applies "if a public charter school student is <u>allowed</u> to participate in the noncharter school's extracurricular activities" (emphasis added). It therefore addresses requirements that might be imposed after approval has been given. It does not mean that approval cannot be withheld – when the statute expressly authorizes a superintendent to withhold approval if a noncharter school does not have capacity.

Under petitioners' interpretation, as the court understands it, a noncharter school would only lack "capacity" when it did not have a team or an extracurricular activity in the first place. That interpretation cannot be squared with the remainder of the statute.

As it has stated before, if left to its own devices, the court would be inclined to allow charter school students to try out for local school teams and play on those teams if they succeed at the tryouts. However, it is obliged to honor the intent of the legislature as made evident in the language of the statute.

Petitioners place their greatest reliance on the argument that their interpretation is shared by the Department of Education, citing a September 2, 2015 letter from then Acting Education Commissioner Desjardin. They argue that the Department's interpretation is entitled to deference. The court is not prepared to give deference to the interpretation of § 2415(2) set forth in the Desjardin letter for several reasons. First, an agency's interpretation of a statute cannot prevail if contrary to the statutory language. *E.g., Guilford Transportation Industries v. PUC,* 2000 ME 31 ¶ 11, 746 A.2d 910.

6

Second, deference to an agency interpretation is most appropriate where statutory language is ambiguous and the agency has been charged with administration of the statute. In this case, as the Desjardin letter admits, the Department of Education does not have a role in administering 20-A M.R.S. § 2415(2). In this case, the Desjardin letter is not entitled to the deference that would accompany a formal adjudication or rulemaking but at best constitutes an opinion letter that is entitled to respect only to the extent that it is persuasive. *See Christensen v. Harris County,* 529 U.S. 576, 587 (2000). The court does not find the Department's interpretation persuasive here because it essentially writes "capacity" out of the statute.

Finally, the court reiterates that the language allowing school superintendents to withhold approval if the local public school "does not have . . . capacity" was enacted in 2014 over the Governor's veto. Laws 2013, c. 601 § 1. The Governor vetoed the bill because he thought it was an unwarranted restriction on charter schools and their students and "would allow public school superintendents to deny charter school students from their districts the opportunity to participate in extracurricular or interscholastic activity." Veto Message dated April 28, 2014, found at Legislative Record H-2-22 May 1, 2014 (House).[5] To the extent that Commissioner Desjardin's interpretation is based at least in part on his administration's disagreement with the statute, his interpretation cannot be allowed to overcome legislative intent.

The entry shall be:

1. Petitioners' Rule 80B challenge is dismissed as moot.

2. In the alternative, the decision of Superintendent Smith not to allow John Doe to try out for the 8th grade Mt. Ararat basketball team is affirmed.

---

[5] The Veto Message went on to argue that the concept of "capacity" was overly vague and would leave the door open to wholesale denials.

3. Discovery on the remaining counts of plaintiffs' complaint shall be completed by July 31, 2016.

4. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).


Dated: June _16_, 2016


Thomas D. Warren
Justice, Superior Court

STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
Cumberland ss. Clerk's Office

JAN 15 2016

RECEIVED

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-15-44

HARPSWELL COASTAL ACADEMY,
et al.,

        Petitioners

v.

M.S.A.D. 75,

        Respondent

ORDER

Before the court is a motion by petitioners Harpswell Coastal Academy, Wesley Withers, Carrie Withers, and John Doe for a stay under Rule 80B and/or for a preliminary injunction.[1]

At the outset, given the specific nature of the relief sought by petitioners, the court concludes that petitioners must demonstrate the standard prerequisites for preliminary equitable relief in order to be entitled to a stay or a preliminary injunction: (1) that they will suffer irreparable harm in the absence of an injunction, (2) that such harm outweighs any injury that an injunction would cause to the respondent or others, (3) that they have shown a likelihood of success on the merits, and (4) that the public interest will not be adversely affected. *See Bangor Historic Track Inc. v. Department of Agriculture,* 2003 ME 140 ¶ 9, 837 A.2d 129.[2]

To the extent that petitioners are seeking affirmative relief rather than an injunction that would simply maintain the status quo, petitioners must show a "clear likelihood of success on the merits" in order to obtain a preliminary injunction. *Department of Environmental Protection v.*

---

[1] In a footnote, respondent MSAD 75 questions the standing of Harpswell Coastal Academy to seek review of the action that is challenged in this case. Because the standing of the remaining petitioners is not being challenged, that issue need not be reached in deciding the pending motion.

[2] This is the same standard petitioners would have to meet if they were seeking a stay while appealing the action of a state agency. *See* 5 M.R.S. § 11004.

*Emerson,* 563 A.2d 762, 768 (Me. 1989). In this case MSAD 75 instituted the policy that is being challenged by petitioners in July 2015, and it is perhaps debatable whether a stay of that policy would constitute affirmative relief or maintain the status quo. This issue need not be reached in order to decide the pending motion.

Petitioners are seeking an injunction requiring MSAD 72 to allow students at Harpswell Coastal Academy, a charter school, to try out for athletic teams and other extracurricular activities at Mt. Ararat Middle School and Mt. Ararat High School. *See* Plaintiffs' motion for stay and preliminary injunction dated November 17, 2015 at 11-12. The specific dispute that gave rise to this action was a decision by MSAD 75 Superintendent Bradley Smith that the son of petitioners Wesley and Carrie Withers, a student attending Harpswell Coastal Academy who is designated as "John Doe" in this action, would not be allowed to try out for the 8th grade basketball team at Mt. Ararat Middle School.

The governing statute provides in pertinent part as follows:

> If a public charter school student applies for and receives written approval from the superintendent of the school administrative unit of the noncharter public school or the superintendent's designee, who may withhold such approval, the public charter school student is eligible to participate in extracurricular activities not offered by the student's public charter school at the noncharter public school within the attendance boundaries of which the student's custodial parent or legal guardian resides or the noncharter public school from which the student withdrew for the purpose of attending a public charter school. <u>The superintendent of the school administrative unit or the superintendent's designee may withhold approval only if the public charter school the student attends provides the same extracurricular or interscholastic activity or if the noncharter public school does not have the capacity to provide the public charter school student with the opportunity to participate in the extracurricular or interscholastic activity.</u>

20-A M.R.S. § 2415(2) (emphasis added).

2

There is no dispute that Harpswell Coastal Academy does not have an 8th grade basketball team. In withholding approval for John Doe to try out for the Mt. Ararat 8th grade basketball team, Superintendent Smith was acting pursuant to a July 2015 policy adopted by MSAD 75 which states that an MSAD 75 school

> does not have capacity to provide a charter school student the opportunity to participate in extracurricular activity when all available slots and positions for the activity are taken by regularly enrolled students. A student enrolled in MSAD 75 schools will not be denied the opportunity to participate in favor of a student enrolled in a charter school.

Because the number of MSAD 75 students who tried out for the 8th grade basketball team exceeded the number of positions on the team, Superintendent Smith informed Mr. and Mrs. Withers that their son would not be allowed to try out.

Petitioners argue that the MSAD policy and Superintendent Smith's decision are based on an incorrect interpretation of state law and violate equal protection.

The statutory interpretation issue may be resolved by comparing the statutes governing participation in public school extracurricular activities by students who attend charter schools, by students who attend private schools, and by home-schooled students. The statute governing the eligibility of private school students to participate in public school extracurricular activities is virtually identical with the statute applicable to charter school students. It provides that private school students are eligible to participate in extracurricular activities at the local public school with the approval of the public school principal, who may withhold approval "only if the school does not have the capacity to provide the student with the opportunity to participate in the extracurricular activity." 20-A M.R.S. § 5021-A(1)(A).

In contrast, the statute governing participation in local school extracurricular activities by home schooled students expressly provides that "[s]tudents receiving home-school instruction

are eligible to try out for extracurricular activities sponsored by the local school unit . . ." 20-A M.R.S. § 5021(5) (emphasis added). Although home-schooled students must apply in writing to engage in extracurricular activities, home-schooled students are not required to obtain any approval from a principal or school superintendent nor does their ability to try out depend on whether the local school has the capacity to provide home-schooled students with the opportunity to participate.[3]

The difficulty with petitioners' argument is that they are interpreting section 2415(2) as if it were identical to section 5021(5), affording charter school students the same unconditional right to try out for local school teams and other extracurricular activities as home schooled students. This interpretation would essentially eliminate the statutory ability of a local school to withhold approval when the local school "does not have the capacity to provide the public charter school student with the opportunity to participate." That statutory language cannot be overlooked. If the legislature had meant for charter school students to be able to try out for public school extracurricular activities without regard to the capacity of the local school to provide for such participation, it would have used the same language as it used in section 5021(5).

Left to its own devices, the court would be inclined to allow charter school students to try out for local school teams and play on those teams if they succeed at the tryouts. However, it is obliged to honor the intent of the legislature as made evident in the language of the statute.

Petitioners argue that their interpretation is shared by the Department of Education, citing a September 2, 2015 letter from then Acting Education Commissioner Desjardin. The court is not prepared to give deference to the interpretation of § 2415(2) set forth in the Desjardin letter for several reasons. First, an agency's interpretation of a statute cannot prevail if contrary to the

---

[3] All that is required is that home schooled students agree to abide by the same rules applicable to regularly enrolled students. *See* 20-A M.R.S. § 5021(5)(A)-(D).

statutory language. *E.g., Guilford Transportation Industries v. PUC,* 2000 ME 31 ¶ 11, 746 A.2d 910. Second, deference to an agency interpretation is most appropriate where statutory language is ambiguous and the agency has been charged with administration of the statute. In this case, as the Desjardin letter admits, the Department of Education does not have a role in administering 20-A M.R.S. § 2415(2).

Finally, the court is obliged to note that the language allowing school superintendents to withhold approval if the local public school "does not have . . . capacity" was enacted in 2014 over the Governor's veto. Laws 2013, c. 601 § 1. The Governor vetoed the bill because he thought it was an unwarranted restriction on charter schools and their students and "would allow public school superintendents to deny charter school students from their districts the opportunity to participate in extracurricular or interscholastic activity." Veto Message dated April 28, 2014, found at Legislative Record H-2-22 May 1, 2014 (House).[4] It appears, therefore, that Commissioner Desjardin's interpretation is based at least in part on his administration's disagreement with the statute. In that event, his interpretation cannot be allowed to overcome legislative intent.

Petitioners' final argument is that the MSAD policy and Superintendent Smith's decision violate the constitutional guarantee of equal protection. However, charter school students do not constitute a suspect classification under the equal protection clause, and the right to participate in extracurricular activities is not a fundamental right. As a result, MSAD 75's policy need only be rationally related to a legitimate state interest in order to survive an equal protection attack.

While the court would not have adopted the policy in question, it is constrained to conclude that the policy is rationally related to the legitimate governmental interest of balancing

---

[4] The Veto Message went on to argue that the concept of "capacity" was overly vague and would leave the door open to wholesale denials.

5

the competing interests of regular MSAD students and those of charter school students with respect to the opportunity to participate in extracurricular activities. For every charter school student who might be given a place on a Mt. Ararat team, a regular Mt. Ararat student would have to be excluded.[5] It is not irrational to conclude that, unless not enough regular students try out for all the available places on the team, the school team should be composed of classmates at the school.

Since the *sine qua non* of the four part standard for a preliminary injunction is likelihood of success on the merits, *see National Organization for Marriage v. Commission on Governmental Ethics and Election Practices*, 2015 ME 103 ¶ 28, 121 A.3d 792, and since the court does not find on this record that petitioners have demonstrated a likelihood of success on the merits, petitioners' motion must be denied.

The final brief on petitioners' Rule 80B appeal has not been filed and the discovery deadline has not expired. The court is prepared to reconsider its views as to the merits in the light of further filings and evidence that may be presented in the case.

The entry shall be:

Petitioners' motion for a stay and/or preliminary injunction is denied. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January 16, 2016

Thomas D. Warren
Justice, Superior Court

---

[5] On this record, the court cannot conclude that there would be no difficulty in simply expanding the team – although that was apparently done on an interim basis in a prior year. Moreover, to survive rational basis scrutiny, a governmental entity is not required to adopt the best solution so long as the solution it adopts is rational.

AMY DIETERICH, ESQ.
BRYAN M. DENCH, ESQ.
SKELTON, TAINTOR, & ABBOTT
95 MAIN STREET, SUITE 3
AUBURN, ME. 04210

Plaintiff's Counsel

MICHAEL E. CAREY, ESQ.
DAVID W. BERTONI, ESQ.
BRANN & ISAACSON
184 MAIN STREET
P.O. BOX 3070
LEWISTON. ME. 04243

Defendant's Counsel